UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-334-GWU

DARRYL GLENN ROARK, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

           in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Id</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Darryl Roark, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of congestive heart failure and decreased kidney function. (Tr. 41).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Roark retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 44-47).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 43, limited education, and lack of transferable work skills could perform any jobs if he were limited to "light" level exertion, with the ability to sit six hours in an eight-hour day and stand and walk two hours in an eight-hour day, and also had the following non-exertional restrictions. He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb ramps and stairs; (3) could "frequently" balance, stoop, kneel, crouch, and crawl; and (4) needed to avoid concentrated exposure to temperature extremes or workplace hazards such as unprotected heights or exposure to dangerous machinery. (Tr. 29). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 30).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Roark alleged disability in his January 5, 2009 application due to a heart condition, which caused him to be out of breath and required him to keep his legs elevated to reduce swelling. (Tr. 114). He testified that he had not worked since being hospitalized on September 1, 2008 and he had been told to limit his activities in terms of not lifting over a certain weight or letting his heart rate exceed 100 beats

per minute. (Tr. 19). He was on medication for his heart that made him drowsy and he would often have to lie down and sleep. (Tr. 20). He testified that he had chest pains two or three times a month, and his hands and feet had been swollen about a month ago, but he kept his legs elevated two or three times a day in order to prevent it. (Id.). He spent most of his day watching television but did do some activity such as preparing sandwiches, doing laundry, and grocery shopping when he went to town three to four times a week. Driving to town involved a 25 to 30 mile trip one way. (Tr. 18, 23-24).

Medical records in the transcript showed that the plaintiff was admitted to the Harlan Appalachian Regional Hospital (ARH) on September 4, 2008 and was discharged two days later with diagnoses of uncontrolled hypertension and congestive heart failure. (Tr. 198). His only medical problem was a significant history of alcohol abuse. An echocardiogram showed congestive heart failure with a small blood clot in the heart. (Id.). He was then transferred to the Hazard ARH for further treatment and was discharged on September 7 with diagnoses of dilated cardiomyopathy, accelerated hypertension, congestive heart failure, stable chest pain, and a left ventricular thrombus. (Tr. 255). A cardiac catheterization and echocardiogram showed normal coronary arteries but an ejection fraction of only 25%; there was also the left ventricular thrombus, for which anti-coagulation

7

medication, Coumadin, was started. (Tr. 256). He was discharged on medication and advised to follow a low fat and low salt diet.

The plaintiff then began treatment at the Clover Fork Clinic, where he was seen by a physician's assistant, Mike Napier, and a physician, usually either Dr. Rachel Eubank or Dr. Sharon Colton (Tr. 372). Office notes from November and December, 2008 show that the plaintiff was still having problems with elevated blood pressure, shortness of breath, and swelling in his legs, and the examiner noted bilateral pitting edema. (Tr. 37). Mr. Roark was again admitted to the Harlan ARH on December 11, 2008 due to excessive swelling in his legs and feet due to congestive heart failure as well as for control of his high blood pressure. (Tr. 302). On medication, his blood pressure came down and his weight was reduced from 185 to 156.5 pounds. He was wearing compression stockings and there was no pitting edema in his extremities. He was discharged on numerous medications and allowed to perform activities "as tolerated." (Tr. 303).

On follow-up with the Clover Fork Clinic, the plaintiff reported that he was doing well with no swelling and only mild shortness of breath at times. (Tr. 369-70). He was advised to see a cardiologist.

Dr. S.R. Appakondu, a cardiologist, examined the plaintiff on January 5, 2009, the date of his SSI application, and found that while his blood pressure was still elevated he was denying chest pain, had no shortness of breath, no

palpitations, and no dizziness.  (Tr. 379).  The physician assessed non-ischemic cardiomyopathy, compensated congestive heart failure, a left ventricular apical thrombosis, and poorly controlled hypertension.  He increased one of the plaintiff's medications and scheduled an echocardiogram to see if there had been improvement in his ejection fraction.  Mr. Roark was advised to follow a low cholesterol and low sodium diet, exercise regularly and control risk factors. No specific functional restrictions are given.

The echocardiogram was obtained on January 8, 2009 and showed an improvement in the left ventricular ejection fraction to 50% from 35% previously. There was only mild enlargement of the left atrium and ventricle and no significant pericardial effusion.  (Tr. 377).

Happily for the plaintiff, office notes from Clover Fork for the remainder of 2009 show that he was doing well with no complaints.  He mentioned in April that he had not returned to his cardiologist because he was doing so well. (Tr. 408).  He denied chest pain, shortness of breath, and edema, said he went walking every day, and was starting to plant a garden.  (Tr. 406).  In June, he reported that he was still doing well, had been able to work in the garden, and tried to walk a mile a day.  He had gained weight, but thought that was because he was eating well, and reported that he did not drink alcohol any longer.  (Tr. 499).  Monthly office notes for the remainder of the year through November report the same activities, and his physical

examination showed a weight gain but normal blood pressure and no other abnormalities. (Tr. 503-5, 523, 525, 527).

State agency physicians Dr. P. Saranga and Dr. David Swan reviewed a portion of the evidence and noted the improvement in the plaintiff's ejection fraction from 35 to 50%. (Tr. 397). Dr. Swan also specifically mentioned the plaintiff's statements to Clover Fork sources that he felt good and did not go back to cardiology, along with the improvement in his physical examination. (Tr. 440). Drs. Saranga and Swan concluded that Mr. Roark was capable of lifting 20 pounds occasionally and 10 pounds frequently, standing and walking at least two hours in an eight-hour day, never climbing ladders, ropes, and scaffolds, occasionally climbing ramps and stairs, and needed to avoid concentrated exposure to extreme cold, heat, and hazards. (Tr. 396-402, 440-46).

Physician's Assistant Napier and Dr. Eubank signed a functional capacity assessment form on November 25, 2009, in which they limited their patient to lifting 5 to 10 pounds occasionally, and only 5 pounds frequently, with no restriction on sitting, standing and walking six to eight hours a day (no more than three to four hours without interruption), "occasionally" performing all postural activities, and having a restriction on working around heights and moving machinery. It was also specified that he "must elevate legs." The only reason given was an ejection fraction of 30% on his echocardiogram. (Tr. 555-57).

Mr. Roark also underwent a consultative examination by Dr. Robert Hoskins on December 7, 2000 and gave a history that differed somewhat from the statements he made to his treating sources. He related, for example, that he had intermittent sharp chest pain, not brought on by any specific activity, and was frequently fatigued. (Tr. 549). He denied exercising and said he was essentially sedentary. (Id.). Dr. Hoskins' examination showed no abnormalities other than mild peripheral edema. (Tr. 550). It does not appear that he had any objective testing to review, although his report might have been incomplete since it does not contain a page with a specific diagnosis. In any case, he completed a physical residual functional capacity assessment limiting the plaintiff to lifting 20 pounds "rarely," and 10 pounds "a small part of the day," sitting four to five hours a day (no more than one hour without interruption and with his legs elevated), standing and walking three hours a day (no more than one hour without interruption, or two hours "on a good day"), "rarely" climbing stairs, stooping, crouching, or kneeling, never crawling, having restrictions on his ability to balance, push, and pull, and needing to avoid heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, and humidity. (Tr. 551-52).

The ALJ rejected the restrictions offered by the treating sources and by Dr. Hoskins on the ground that they were not supported by any objective findings. Instead, she stated she gave substantial weight to the findings of the state agency

"examiners." She emphasized the plaintiff's "essentially normal" functional activity as reflected in the Clover Fork office notes in the improvement of the ejection fraction to 50% from the 30% cited by Dr. Eubank. (Tr. 45). She felt Dr. Hoskins offered restrictions that were inconsistent with his findings as well as the activities given in the Clover Fork notes. (Id.).

On appeal, the plaintiff contends that he meets the Commissioner's Listing of Impairment 4.02 for chronic heart failure, but this listing requires, among other factors, an ejection fraction of "30 percent or less during a period of stability (not during an episode of acute heart failure) . . . ." Since the only echocardiogram taken after the plaintiff's application for benefits shows that his ejection fraction had improved to 50%, he clearly did not meet the requirements of the listing.

The plaintiff also objects to the rejection of the treating source opinions in favor of non-examiners who did not have the benefit of the review of the entire record, citing Social Security Ruling (SSR) 96-6p. Under the particular circumstances of this case, the court finds that the ALJ could reasonably have relied on the state agency reviewers over the treating and examining sources, because the reviewers clearly had access to the echocardiogram showing an improvement in the plaintiff's ejection fraction, and Dr. Swan explicitly relied on the plaintiff's statements as reported in the Clover Fork notes. To the extent that Dr. Eubank was basing her opinion on an ejection fraction of 30%, she apparently did not have

updated records or was simply making a mistake.  Moreover, the repeated references in her office notes to the plaintiff's lack of complaints, daily activities, and the absence of any adverse objective findings could reasonably have led the ALJ to conclude that her opinion was not entitled to controlling weight.  Likewise, it is not clear from Dr. Hoskins' narrative report on what he was basing his extreme limitations.  The non-examiners appear to have had access to essentially all of the relevant evidence.

The plaintiff raises the issue of a statement by the ALJ that "both Drs. Eubank and Hoskins felt the claimant would require elevation of the lower extremities when sitting; however, this limitation can be accommodated during typical morning and afternoon breaks generally found in a work setting." (Tr. 45-6). While there is no vocational testimony that such a limitation could be accommodated during normal breaks, the court notes that the ALJ did not make the elevation of legs part of her formal residual functional capacity finding, and she clearly intended to adopt the opinions of the state agency reviewers, who did not find any need for the plaintiff to elevate his legs.  Moreover, there is nothing in any of the office notes from Clover Fork or from the plaintiff's cardiologist instructing him to keep his legs elevated.  Therefore, it appears that the ALJ's comment was gratuitous.  Under the circumstances, there was no need to present the restriction to the vocational expert.

Finally, the plaintiff challenges the ALJ's credibility determination, alleging that it was error to find him less than fully credible because his statements were not substantiated by objective medical evidence alone. 20 C.F.R. § 404.1529(c)(2). However, the ALJ clearly cited not just the medical evidence but the plaintiff's own accounts of his daily activities as given to the treating source and in questionnaires completed as part of the administrative process. (Tr. 45-46). Therefore, this argument is without merit.

The decision will be affirmed.

This the 19th day of October, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**